**BEFORE THE UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION**

| | |
|---|---|
| **IN RE: Unilever Aerosol Products Marketing, Sales Practices, and Products Liability Litigation** | **MDL DOCKET NO._____** |

**MOTION OF PLAINTIFFS TO TRANSFER OF ACTIONS TO THE NORTHERN DISTRICT OF ILLINOIS PURSUANT TO  28 U.S.C. § 1407 FOR COORDINATED OR CONSOLIDATED PRETRIAL PROCEEDINGS**

Pursuant to 28 U.S.C. §1407 and the Judicial Panel on Multi-District Litigation Rule 6.2, Movants Samantha Simmons, Ansleigh Walters, Marykay Thrower, Jackie Spivey, Laura Martson, Chrissie Humenny, Yvonne Barnes, Patricia Dean, Antonio Morris, Bernadette Bogdanovs, and Lawanda Sims respectfully move the Panel for an Order transferring all of the currently-filed cases list in the attached Schedule of Action, as well as any cases subsequently filed involving similar facts or claims ("tag-along cases") to the United States District Court of the Northern District of Illinois to facilitate their expeditious litigation.

This motion is based on the Memorandum of Points and Authorities and Schedule of Actions filed herewith.

**I.      INTRODUCTION**

Established over 100 years ago, Unilever is one of the world's largest consumer goods companies. On March 30, 2022, Unilever announced it was voluntarily recalling two Suave 24-Hour Protection aerosol antiperspirants due to "unexpected," "elevated levels of benzene" in those products.[1] Unilever's "internal review" showed that "some product samples" of the two

---

[1] https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/unilever-issues-voluntary-nationwide-recall-suave-24-hour-protection-aerosol-antiperspirant-powder.

antiperspirants contained benzene that "came from the propellant" used in manufacturing the antiperspirants.[2] About six months later, in October 2022, Unilever announced a recall of 19 of its dry shampoo and foam shampoo products under the Dove, Nexxus, Suave, TRESemmé, Bed Head, and Rockaholic brands. Once again, Unilever "identified the propellant as the source" of the benzene contamination.[3] One of Unilever's brands, Suave, has benzene-contaminated antiperspirant *and* dry shampoo products subject to the recalls. Both recalls sparked the filing of multiple class action lawsuits.

After consolidation, there is currently one deodorant/antiperspirant class action filed in the Northern District of Illinois[4]—the first-filed of all cases concerning benzene-contaminated Unilever products. Meanwhile, there are seven (7) dry shampoo/foam shampoo putative class action lawsuits pending in five (5) different federal courts.[5] Plaintiffs in all of these putative class actions allege that they purchased Unilever deodorant/antiperspirant or dry shampoo/foam shampoo products, that the products were allegedly contaminated with benzene, and that they purportedly suffered economic injury because the allegedly contaminated products were worthless

---

[2] *Id*.

[3] https://www.unileverusa.com/news/press-releases/2022/unilever-issues-voluntary-us-recall-of-select-dry-shampoos-due-to-potential-presence-of-benzene/.

[4] *Barnes v. Unilever United States Inc.*, Case No. 1:21-cv-6191 (N.D. Ill.) (Judge Matthew F. Kennelly) (the "*Barnes* Action" or the "Deodorant Action").

[5] The pending dry shampoo/foam shampoo class (collectively "Dry Shampoo") actions are: (1) *Schriver et al. v. Unilever United States, Inc*., Case No. 1:2-cv-23706-DPG (S.D. Fla.) (Judge Darrin P. Gayles) (case transferred to District of Connecticut); (2) *Barnette v. Unilever United States, Inc*., Case No. 3:22-cv-01236 (M.D. Fla.) (Judge Harvey E. Schlesinger); (3) *Sims v. Unilever United States, Inc*., Case No. 1:22-cv-06140 (N.D. Ill.) (Judge Martha M. Pacold); (4) *Rullo v. Unilever United States, Inc*., Case No. 2:22-cv-06422 (D. N.J.) (Judge Susan D. Wigenton) (case transferred to District of Connecticut); (5*) Simmons v. Unilever United States Inc*., Case No. 3:22-cv-23376 (N.D. Fla.) (Judge T. Kent Wetherell); (6) *Loudenslager v. Unilever United States, Inc*., Case No. 3:22-cv-01020 (M.D. La.) (Judge John W. deGravelles); and (7) *Little, et al. v. Unilever United States, Inc.*, Case No. 3:22-cv-01189 (D. Conn.) (Judge Michael P. Shea).

or were not worth the price they paid. All of these putative class actions allege violations of various consumer protection statutes, breach of express and implied warranties, and unjust enrichment. They also request the same type of economic damages (refunds) and equitable relief (injunctions).

Accordingly, pursuant to 28 U.S.C. § 1407 and Rule 6.2 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, Samantha Simmons, Ansleigh Walters, MaryKay Thrower, Jackie Spivey, Laura Martson, and Chrissie Humenny, plaintiffs in the case styled *Simmons et al. v. Unilever United States Inc*., No. 3:22-cv-23376 (N.D. Fla.), Yvonne Barnes, Patricia Dean, Antonio Morris, and Bernadette Bogdanovs, plaintiffs in the *Barnes* Action, and Lawanda Sims, plaintiff in the case styled *Sims v. Unilever United States, Inc*., No. 2:22-cv-06140 (N.D. Ill.) (collectively "Movants"), respectfully move the Judicial Panel on Multidistrict Litigation for an Order transferring the *Barnes* deodorant case and seven (7) Dry Shampoo cases listed in the Schedule of Actions filed concurrently herewith (collectively "the Actions"), as well as any tag-along cases subsequently filed involving similar facts or claims, to the U.S. District Court for the Northern District of Illinois for coordinated or consolidated proceedings.[6]

Movants request that the Actions be transferred to the Northern District of Illinois before the Honorable Matthew F. Kennelly. Judge Kennelly has presided over the first-filed benzene-contaminated deodorant action against a Unilever product (the *Barnes* Action) since November 2021, has conducted scheduling and case management conferences, has consolidated several other Deodorant Actions before his court, and has ruled on the initial rounds of pleadings motions in

---

[6] The Panel has routinely ordered centralization even where three or fewer cases are pending. *See, e.g*., *In re Wireless Tel. Replacement Prot. Programs Litig*., 180 F. Supp. 2d 1381, 1382 (J.P.M.L. 2002) (consolidating three consumer protection cases and determining that pending motions can be presented to and decided by the transferee judge); *In re Phila. Life Ins. Co. Sales Pracs. Litig.*, 149 F. Supp. 2d 937, 938 (J.P.M.L. 2001) (consolidating two deceptive insurance sales cases and finding that such transfer would promote the just and efficient conduct of the litigation);

that action, including Unilever's initial motion to dismiss.[7]  *See generally Barnes v. Unilever United States Inc.*, 2022 WL 2915629 (N.D. Ill. July 24, 2022).  Accordingly, Judge Kennelly is intimately familiar with the facts and legal issues of the related actions, and having him preside over all actions would be serve the interests of judicial economy.  In the alternative, the Panel should transfer only the Dry Shampoo Actions to Judge Martha Pacold in the Northern District of Illinois, who is also a capable jurist and currently assigned the *Sims* matter pending in the Northern District of Illinois, and whose proximity to Judge Kennelly will ensure the most convenient administration of the related actions.

Given that the "propellant," according to Unilever, is the acknowledged source of benzene contamination in both the Deodorant and Dry Shampoo Actions, discovery in both actions is likely to overlap. Indeed, discovery conducted in each of these Actions will be substantially similar and will involve the same documents and witnesses vis-à-vis Unilever. Further, questions of law and fact will undoubtedly overlap between the groups of Actions because they arise from a common factual core, in this instance, the source of the benzene contamination, similar legal theories, and almost identical factual allegations.

Moreover, while some informal coordination with counsel for various plaintiffs and Unilever has taken place, to date such coordination has been sporadic, minimal, and ineffective. Evidence of that fact is that counsel for various parties have sought to consolidate and/or transfer the Deodorant and Dry Shampoo Actions in different federal courts (i.e. the Northern District of Illinois and the District of Connecticut). This is inefficient, particularly where Unilever is the

---

[7] *Morris v. Unilever United States Incorporated*, No. 22-cv-00338 (N.D. Ill.) ("Morris") and *Bogdanovs v. Unilever United States Inc.*, No. 1:22-cv-03143 (N.D. Ill.) ("Bogdanovs") have been consolidated into the *Barnes* Action (hereafter "Deodorant Action").  *See Barnes* Action, Doc. 58 at 7.

common defendant in all Actions and the source of the benzene contamination in all Actions is the same. If necessary, the transferee judge could account, at his or her discretion, for any differences among the actions through the use of appropriate pretrial techniques—such as establishing separate discovery and/or motion tracks related to Deodorant and Dry Shampoo Actions—to efficiently manage this litigation. *In re: Ephedra Prods. Liab. Litig.*, 314 F. Supp. 2d 1373, 1375 (J.P.M.L. 2004). In any event, as noted by the Panel in *Oxycontin*, "transfer under Section 1407 has the salutary effect of placing all actions in this docket before a single judge who can formulate a pretrial program that ensures that pretrial proceedings will be conducted in a manner leading to the just and expeditious resolution of all actions to the overall benefit of the parties." *In re Oxycontin Antitrust Litig.,* 314 F. Supp. 2d 1388, 1390 (J.P.M.L. 2004) (centralizing litigation, even though several motions to transfer had already been granted).

Absent formal coordination, there will inevitably be duplication in discovery and other pretrial matters, potentially inconsistent pretrial rulings (including with to *Daubert* challenges and class certification motions), and duplication of work for the parties, counsel, and courts. Formal coordination, whereby a Plaintiffs' Steering Committee is appointed, will alleviate many of these concerns. *See In re: Cooper Tire & Rubber Co. Tires Prods. Liab. Litig*., 2001 WL 253115, at *1 (J.P.M.L. Feb. 23, 2001) (centralization under Section 1407 granted where "[m]otion practice and relevant discovery will overlap substantially in each action."); *In re: Cuisinart Food Processor Antitrust Litig*., 506 F. Supp. 651, 655 (J.P.M.L. 1981) (transfer would "effectuate a significant overall savings of cost and a minimum of inconvenience to all concerned with the pretrial activities").

While the Panel has not always been eager to centralize litigation on an industry-wide basis, it has not hesitated to do so where it has determined that centralization is the best solution,

including where, as here, the litigation involves several putative class actions filed across the country, concerns products manufactured by the same defendant, and alleges the same or similar harm. *See*, *e.g.*, *In re: Johnson & Johnson Sunscreen Mktg., Sales Pract. and Prods. Liab. Litig.*, 568 F. Supp. 3d 1412, 1413-14 (J.P.M.L. 2021) (consolidating benzene contamination sunscreen actions); *In re: Abbott Infant Formula Prods. Liab. Litig.*, ___ F. Supp. 3d ___, 2022 WL 3134144, at *1-2 (J.P.M.L. Aug. 5, 2022); (consolidating infant formula contamination actions).

The Panel has even *rejected* requests to create separate MDLs for different product lines involving the same manufacturer where "all the actions contained the same core factual allegation." *In re: Frito-Lay North America, Inc. All Natural Litigation*, 908 F. Supp. 2d 1379-1380 (J.P.M.L. 2012) (centralizing seven actions involving different product lines—Frito-Lay Bean Dip, SunChips, and Tostitos—on basis that they all "share factual questions arising out of allegations that Frito-Lay markets and labels certain food products grown from genetically modified organisms as 'All Natural,' in a manner that is allegedly misleading to consumers"). *See Generally In re: Walgreens Herbal Supplements Mktg. and Sales Pract. Litig.*, 109 F. Supp. 3d 1373 (J.P.M.L. 2015) (rejecting arguments for separate MDLs and finding that "a single MDL encompassing all four retailers is necessary to ensure the just and efficient conduct of this litigation."); *In re: Automotive Wire Harness Sys. Antitrust Litig.*, 867 F.Supp.2d 1349, 1350 (J.P.M.L.2012) (centralizing three proposed dockets concerning different types of automotive products in a single MDL because each proposed docket shared significant factual issues and "stem[med] from the same government investigation"); *In re: Fluoroquinolone Prods. Liab. Litig.*, 122 F.Supp.3d 1378 (J.P.M.L. 2015) (centralizing actions involving different defendants and different drugs where the allegations involved the same alleged misconduct and same injury); *In re: Androgel Prods. Liab. Litig.*, 24 F. Supp. 3d 1378 (J.P.M.L. 2014) (centralizing all-

testosterone replacement therapy actions); *In re: Incretin Mimetics Prods. Liab. Litig*., 968 F. Supp. 2d 1345 (J.P.M.L. 2013) (centralizing actions against competing defendants which manufactured four similar diabetes drugs that allegedly caused pancreatic cancer).

## II.   LEGAL STANDARD

Transfer and consolidation is proper if actions pending in different federal district courts involve similar questions of fact to the extent that consolidating pretrial proceedings would "be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a).

## III.   ARGUMENT

### A.   These Actions are Appropriate for Transfer and Coordination pursuant to 28 U.S.C. § 1407(a).

1.      These Actions Involve Common Questions of Fact.

Section 1407 requires that for centralization to be appropriate, the cases must share "one or more common questions of fact."  In assessing whether consolidation is appropriate under section 1407, the Panel looks to the pleadings. The complaints in these cases clearly present common questions of fact. Each complaint is based on allegations that Unilever's products are contaminated and/or adulterated with benzene, a known human carcinogen, in violation of various statutes and state common law resulting in nationwide product recalls. In addition, the complaints allege similar legal theories and seek certification of similar classes and/or subclasses. This Panel has consistently consolidated cases such as this because, even though they involve different products, they inherently involve common questions of fact.  *See, e.g., In re: Johnson & Johnson Sunscreen Mktg., Sales Pract. and Prods. Liab. Litig.*, 568 F. Supp. 3d at 1413-14; *In re: Abbott Infant Formula Prods. Liab. Litig.*, 2022 WL 3134144, at *1-2; *In re: Fluoroquinolone Prods. Liab. Litig.*, 122 F.Supp.3d at 1379.

2.      Transfer and Coordination Serves Not Only the "Convenience of the Parties and Witnesses," but also "Promote(s) the Just and Efficient Conduct of the Action."

Here, consolidation will avoid duplicative discovery and prevent inconsistent pretrial rulings. First, centralization sidesteps tremendous inefficiencies in the process of conducting discovery. This is an important consideration for the Panel in that transfer and consolidation "ensure[s] that the actions are supervised by a single judge who, from day-to-day contact with all aspects of the litigation, will be in the best position to design a pretrial program that will prevent duplicative discovery . . . and substantially conserve the time and efforts of the parties, the witnesses and the federal judiciary." *In re Resource Exploration Inc. Sec. Litig.,* 483 F. Supp. 817, 821 (J.P.M.L. 1980). This includes reducing the cost of document review platforms and depositions for third party witnesses as much as party witnesses. Consolidation of the cases will permit the parties to coordinate their efforts in a single proceeding, thereby promoting efficiency and preserving parties' and judicial resources.

Second, consolidation decreases the likelihood of inconsistent ruling on pretrial issues because of the possible *res judicata* or collateral estoppel effects on other cases. *See In re Enron Sec. Derivative & ERISA Litig.*, 196 F. Supp. 2d 1375, 1376 (J.P.M.L. 2002) (granting a transfer in part to prevent inconsistent pretrial rulings, particularly with respect to questions of class certification).

**B. This Panel Should Transfer the Related Actions to the Northern District of Illinois Before Judge Matthew Kennelly**

The selection of an appropriate transferee court is based on a balancing test of several factors, none of which is dispositive. *See* Manual of Complex Litigation (Fourth) § 20.131 (2004) (citing Robert A. Cahn, *A Look at the Judicial Panel on Multidistrict Litigation*, 72 F.R.D. 211, 214-15 (1977). The factors include:

- Where the largest number of cases is pending;

- Where discovery has occurred;

- Where cases have progressed furthest;

- The side of the occurrence of the common facts;

- Where the cost and inconvenience will be minimized; and

- The experience, skill and caseload of available judges.

*Id.*

The Panel considers the location of the first-filed case as an influential factor. *See, e.g., In re Household Goods Movers Antitrust Litig.*, 502 F. Supp. 2d 1356, 1357 (J.P.M.L. 2007) (noting the presence of the "first-filed" action as an influential factor in the selection of the transferee district). *See also In re Broiler Chicken Grower Antitrust Litig.*, 509 F. Supp. 3d 1359, 1362 (J.P.M.L. 2020) (transferring to Oklahoma because "[t]he Oklahoma action is the first-filed action and the most procedurally advanced"); *In re Juul Labs, Inc., Mktg., Sales Pracs., & Prod. Liab. Litig.*, 396 F. Supp. 3d at 1368 (noting presence of first-filed case in district as factor in transferring cases); *In re Mattel, Inc., Toy Lead Paint Products Liability Litigation,* 528 F.Supp.2d 1367, 1369 (J.P.M.L.2007) (transferring case to Central District of California because, among other things, "[t]he first-filed action is pending there."). The first case (*Barnes* Action) alleging benzene-contaminated deodorants/antiperspirants manufactured by Unilever was filed on November 18, 2021 before Judge Kennelly in the Northern District of Illinois. Since then, all other Deodorant Actions against Unilever have been consolidated (after transfer) before Judge Kennelly.

At the same time, there are currently seven (7) Dry Shampoo putative class actions pending in five (5) different federal jurisdictions—three (3) in the District of Connecticut, one (1) in the Northern District of Illinois, one (1) in the Middle District of Florida, one (1) in the Northern

District of Florida, and one (1) in the Middle District of Louisiana. The first-filed Dry Shampoo class action (*Little*) was filed in the District of Connecticut on September 21, 2022.[8] However, the *Little* case is in its infancy. Nothing of substance has been docketed in the *Little* case beyond the filing of the class action complaint and the court's *sua sponte* finding that the complaint does not state an adequate basis for subject matter jurisdiction, necessitating that the plaintiff's file a statement on the docket setting forth the citizenship of the defendant.[9] The *Little* case is currently stayed until February 23, 2022, based on representations to the court that Unilever has filed or anticipates filing motions to transfer other Dry Shampoo Actions to the District of Connecticut.[10]

While each of the Deodorant and Dry Shampoo Actions is assigned to capable jurists, the most efficient and obvious choice is to consolidate all Actions in the Northern District of Illinois before the Honorable Matthew F. Kennelly.  As noted, the *Barnes* Action is the first-filed action concerning benzene-contaminated Unilever products by nearly a year, and Judge Kennelly has conducted scheduling and case management conferences, has consolidated other Deodorant Actions before his court, and has ruled on the initial rounds of pleadings motions. Thus, the Deodorant Action has progressed furthest in the Northern District of Illinois before Judge Kennelly.

In addition, as noted above, the Deodorant Action and the Dry Shampoo Actions are undoubtedly related. Both Actions concern the same contamination (benzene) stemming from the same source (the propellant) in products produced by the same manufacturer (Unilever).  *See In re: Frito-Lay*, 908 F. Supp. 2d at 1379.  The Actions also share overlapping claims (breach of

---

[8] *Little v. Unilever United States, Inc.*, Case No. 3:22-cv-01189 (D. Conn.) (ECF No. 1).

[9] *Id.* at ECF No. 8.

[10] *Id.* at ECF No. 16.

express and implied warranties, unjust enrichment, and violations of state consumer protections statutes) and the same alleged injury (economic harm only), all of which Judge Kennelly is familiar with from having ruled on Unilever's first motion to dismiss.  *See generally Barnes v. Unilever United States Inc.*, 2022 WL 2915629 (N.D. Ill. July 24, 2022).  Accordingly, Judge Kennelly is the logical choice for consolidation given his extensive familiarity with the related Actions, and consolidation avoids the risk that assignment to any other jurist will lead to inconsistent judgements and duplicative discovery.

Moreover, Judge Kennelly, as the Panel knows, is a very experienced jurist, having served in the Northern District of Illinois since 1999 with experience presiding over MDLs, including the *In re Testosterone Replacement Therapy Products Liability Litigation* (MDL 2545) which currently has only 11 actions left in it.  While the Panel recently transferred *In re: Abbott Infant Formula Products Liability Litigation* (MDL 3037) to Judge Kennelly, the litigation has not yet proven to be a behemoth in terms of the number of pending cases, discovery has commenced, and pleadings motions are being briefed.  Thus, Judge Kennelly has shown how deftly and efficiently he can handle similar complex litigations.

In addition, the Panel has considered the support of parties in determining the best transferee court.  *See, e.g., In re SFBC Int'l, Inc., Sec. & Derivative Litig.*, 435 F. Supp. 2d 1355, 1356 (J.P.M.L. 2006) (relying on the fact that the District of New Jersey was "the preferred transferee forum of several responding parties" in deciding to transfer the MDL to that district); *In re Anthem, Inc., Customer Data Sec. Breach Litig.*, 109 F. Supp. 3d 1364, 1365 (J.P.M.L. 2015) (selecting Northern District of California as transferee district, noting that "[n]umerous plaintiffs support centralization in this district, both in the first instance and in the alternative.").  Here, plaintiffs' counsel in the *Barnes* Action and the *Sims* Dry Shampoo case pending in the

Northern District of Illinois support transfer of the Actions to the Northern District of Illinois before Judge Kennelly.  Accordingly, this factor also supports transfer to Judge Kennelly.

Finally, the Northern District of Illinois has long had the infrastructure to easily accommodate out-of-town lawyers, parties, and witnesses should the need arise to appear in person.  Further, the Northern District of Illinois is arguably one of the most convenient and readily accessible location for any litigation. It is centrally located and has a superfluous amount of reasonable of accommodations for those traveling to the court.

### C.  In the Alternative, the Dry Shampoo Actions Should be Consolidated Before Judge Pacold in the Northern District of Illinois

As an alternative, the Panel could consolidate only the Dry Shampoo Actions before Judge Pacold in the Northern District of Illinois.  As noted above, the Northern District of Illinois has the infrastructure and convenience to handle an MDL proceeding.  Further, Judge Pacold is a capable jurist who presides over the *Sims* Dry Shampoo Action pending in the Northern District of Illinois and has not yet had the opportunity to preside over an MDL. More important, though, Judge Pacold sits in the same courthouse as Judge Kennelly, meaning coordination between the *Barnes* Action and the Dry Shampoo Actions can be most easily effectuated without having to assign Judge Kennelly an additional MDL proceeding.  Such an assignment would also ensure that the *Barnes* Action—which is nearly a year ahead of the Dry Shampoo Actions—can continue at its current pace.

### IV.  CONCLUSION

Wherefore, for all the foregoing reasons, Movants respectfully request an Order transferring all cases relating to the Deodorant Actions and Dry Shampoo Actions to Judge Matthew Kennelly of the Northern District of Illinois, or in the alternative, only the Dry Shampoo Actions to Judge Pacold in the Northern District of Illinois.

Dated: December 15, 2022

Respectfully submitted,

By: /s/ Bryan F. Aylstock
Bryan F. Aylstock
R. Jason Richards
E. Samuel Geisler
AYLSTOCK, WITKIN, KREIS &
OVERHOLTZ, PLLC
17 E. Main Street, Ste. 200
Pensacola, Florida 32602
T: (850) 202-1010
F: (850) 916-7449
baylstock@awkolaw.com
jrichards@awkolaw.com
sgeisler@awkolaw.com

Kiley L. Grombacher
BRADLEY/GROMBACHER, LLP
31365 Oak Crest Dr., Ste. 240
Westlake Village, California 91361
T: (805) 270-7100
F: (805) 270-7589
kgrombacher@bradleygrombacher.com

*Attorneys for Movants Samantha Simmons,*
*Ansleigh Walters, Marykay Thrower, Jackie*
*Spivey, Laura Martson, Chrissie Humenny,*
*and Bernadette Bogdanovs*

Jonathan Shub
SHUB LAW FIRM LLC
134 Kings Hwy E., 2nd Fl.
Haddonfield, New Jersey 08033
T: (856) 772-7200
F: (856) 210-9088
klaukaitis@shublawyers.com
jshub@shublawyers.com

*Attorney for Movant Antonio Morris*

Gary M. Klinger
Nick Suciu III
MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC

227 W. Monroe Street, Suite 2100
Chicago, Illinois 60602
T: (866) 252-0878
gklinger@milberg.com
nsuciu@milberg.com

Max S. Roberts
Bursor & Fisher, P.A.
888 Seventh Ave.
New York, New York 10019
T: (646) 837-7408
F: (212) 989-9163
mroberts@bursor.com

Charles E. Schaffer
Levin Sedran & Berman LLP
510 Walnut Street, Ste. 500
Philadelphia, Pennsylvania 19106
T: (215) 592-1500
F: (215) 592-4663

Jason P. Sultzer
The Sultzer Law Group, P.C.
270 Madison Avenue, Ste. 1800
New York, New York 10016
T: (551) 370-8776
sultzerj@thesultzerlawgroup.com

*Attorneys for Movants Yvonne Barnes, Patricia Dean, and Lawanda Sims*