# BEFORE THE UNITED STATES
# JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| In re: Unilever Aerosol Products Marketing, Sales Practices, and Products Liability Litigation | MDL Docket No. 3068 |

## UNILEVER UNITED STATES, INC.'S OPPOSITION TO TRANSFER OF ACTIONS TO THE NORTHERN DISTRICT OF ILLINOIS PURSUANT TO 28 U.S.C. § 1407 FOR COORDINATED OR CONSOLIDATED PRETRIAL PROCEEDINGS

It appears that Movants' counsel seeks to use centralization under Section 1407 to seize control of the dry shampoo litigation from the first-filing Connecticut plaintiffs. Whatever their motive, there is no need to resort to the blunt tool of Section 1407 when the parties' efforts to coordinate and consolidate using Section 1404 transfers has been working so well.

Over the past 14 months, antiperspirant cases filed against Unilever were transferred to the Northern District of Illinois and consolidated before a single judge. The consolidated antiperspirant cases have already been through two motion hearings and multiple rounds of early briefing. Separately, dry shampoo cases (which involve different products manufactured in a different facility from the antiperspirant products, pursuant to different specifications, test methods and manufacturing processes, using different ingredients) have been and are being transferred to the District of Connecticut. If not for Movants' motion for centralization and other efforts to avoid consolidation in the District of Connecticut (including motions to intervene in cases where counsel had already agreed to transfer to Connecticut filing an action in the Northern District of Florida) that process, which already worked for the antiperspirant cases, may well have been completed. Unilever United States, Inc. agrees that coordination of these cases is warranted, but given the

parties' success at managing and consolidating these cases through Section 1404 process, there is no need for an MDL here.

## BACKGROUND

In 2021, varying levels of benzene were reportedly found in a number of different aerosol consumer products, from hand sanitizer to sunscreen, with recalls and litigation resulting. Unilever conducted an internal review that showed slightly elevated levels of benzene in some samples of its Suave 24 Hour Protection Aerosol Antiperspirant. In March 2022, Unilever conducted a recall of the Suave antiperspirant, which had already been discontinued in October 2021 for business reasons.[1] Unilever continues to offer refunds to consumers who purchased the recalled antiperspirant.

### The Antiperspirant Cases Are Consolidated in the Northern District of Illinois

Several purchasers of the Suave antiperspirant filed putative class actions claiming economic injuries based on trace levels of benzene in the product. As the result of Unilever's efforts at Section 1404 coordination, these five putative class actions were eventually consolidated in the *Barnes* antiperspirant case:

- *Leyva v. Unilever United States, Inc.*, No. 4:21-cv-10107 (S.D. Fla.) (filed Nov. 12, 2021) — voluntarily dismissed (Dkt. No. 30) simultaneously with counsel's appearance for plaintiffs in *Barnes* on February 25, 2022 (*Barnes* Dkt. No. 24) after Unilever moved to dismiss on February 7, 2022 (Dkt. No. 27);

- *Barnes, et al. v. Unilever United States, Inc.*, No. l:21-cv-06191 (filed Nov. 18, 2021) (N.D. Ill.) — remains the sole pending putative class action regarding Unilever's Suave antiperspirant products;

---

[1] FDA, *Unilever Issues Voluntary Nationwide Recall of Suave 24-Hour Protection Aerosol Antiperspirant Powder and Suave 24-Hour Protection Aerosol Antiperspirant Fresh Due to Presence of Slightly Elevated Levels of Benzene* (Mar. 30, 2022), https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/unilever-issues-voluntary-nationwide-recall-suave-24-hour-protection-aerosol-antiperspirant-powder.

- *Goytia v. Unilever United States, Inc.*, No. 2:22-cv-00289 (E.D.N.Y.) (filed Jan. 18, 2022) — voluntarily dismissed (Dkt. No. 14) shortly before counsel's appearance for plaintiffs in *Barnes* on March 1, 2022 (*Barnes* Dkt. No. 27);

- *Morris v. Unilever United States Inc.*, No. 1:22-cv-00338 (filed Jan. 20, 2022) (N.D. Ill.) — transferred to Judge Kennelly (who presides over *Barnes*) on January 28, 2022 (*Morris* Dkt. No. 6; *Barnes* Dkt. No. 22) and consolidated with *Barnes* on March 11, 2022 (*Morris* Dkt. No. 18; *Barnes* Dkt. No. 39); and

- *Bogdanovs v. Unilever United States, Inc.*, No. 5:22-cv-652 (C.D. Cal.) (filed Apr. 14, 2022) — transferred to Northern District of Illinois on June 14, 2022, based on parties' stipulation (Dkt. Nos. 23, 24) and consolidated with *Barnes* after Unilever moved to dismiss and to transfer (Dkt. Nos. 15-17, 18-19);

In response to Unilever's motions to transfer under Section 1404, pursuant to the first-to-file rule, the parties in these cases cooperated to consolidate the litigation in *Barnes*. Plaintiffs in *Barnes* filed a consolidated amended complaint and first amended consolidated complaint on behalf of all plaintiffs. The putative nationwide class in *Barnes* is defined as:

> All persons who purchased one or more of Defendant's [Suave 24-hour Protection Powder aerosol antiperspirant and Suave 24-hour Protection Fresh aerosol **antiperspirant products**] in the United States for personal or household use within any applicable limitations period.

*See* First Am. Consol. Class Action Compl. ¶¶ 1, 119, *Barnes*, Dkt. No. 60 (emphasis added) (Exhibit A).

### The *Little* Dry Shampoo Action is Filed in the District of Connecticut

On September 21, 2022, nine plaintiffs from five states sued Unilever in the District of Connecticut. *See* Class Action Compl., *Little, et al. v. Unilever United States, Inc.*, No. 3:22-cv-01189, Dkt. No. 1 (D. Conn.) (Exhibit B). They allege that a Connecticut lab conducted testing for them that detected trace levels of benzene in certain Unilever dry shampoo products sold under the Suave, TIGI, TRESemmé, Dove, Nexxus, and Living Proof brands. *Id.* ¶ 1. They claim that Unilever deceived them by not disclosing the presence or risk of benzene in these dry shampoo products. *Id.* They do not allege any personal injury from exposure to benzene, only that they

were "economically harmed" because the dry shampoo products were "worthless" due to the alleged trace amounts of benzene. *Id.* ¶¶ 16, 89. The *Little* plaintiffs seek to certify and represent a nationwide class of:

> All persons in the United States who purchased any of the **Unilever Dry Shampoo Products** for personal, family or household use within the applicable statute of limitations.

*Id.* ¶¶ 106-07 (emphasis added). The putative class definitions in the other dry shampoo cases in the Schedule of Actions are substantively identical.

### Unilever Recalls Select Lots of Dry Shampoo Products

Less than a month after the *Little* case was filed in late 2022, and based on its own investigation, Unilever voluntarily recalled select lot codes of certain dry shampoo products (each of which had been manufactured prior to October 2021) due to trace amounts of benzene.[2] As noted in the recall notice: "Benzene is ubiquitous in the environment. Humans around the world have daily exposures to it indoors and outdoors from multiple sources." *Id.* An independent health hazard evaluation showed that daily exposure to benzene in the recalled products at the level detected in testing would not be expected to cause adverse health consequences. *Id.* Unilever is offering reimbursement to those who purchased dry shampoo products affected by the recall. *Id.*

### Copycat Dry Shampoo Class Actions Are Filed After the Recall

After Unilever's recall, six additional[3] putative consumer class actions related to the recalled dry shampoo products were filed, each of which is listed in the Schedule of Actions:

---

[2] FDA, *Unilever Issues Voluntary U.S. Recall of Select Dry Shampoos Due to Potential Presence of Benzene* (Oct. 21, 2022), https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/unilever-issues-voluntary-us-recall-select-dry-shampoos-due-potential-presence-benzene.

[3] Movants suggest that the dry shampoo recall "sparked the filing of multiple class action lawsuits." Mot. at 2. In fact, *Little* had already been filed, and that complaint was based on the plaintiffs' own testing (conducted by a third-party lab in Connecticut) rather than the recall. It is fair to say that the plaintiffs and counsel in the copycat dry shampoo cases are riding the coattails of *Little*.

- *Rullo v. Unilever United States, Inc.*, No. 3:22-cv-01618 (D. Conn.) (previously No. 2:22-cv-06422 (D.N.J)) (filed Nov. 2, 2022) — transferred to District of Connecticut on December 6, 2022 by agreement of the parties;

- *Sims v. Unilever United States, Inc.*, No. 1:22-cv-06140 (N.D. Ill.) (filed Nov. 4, 2022) — pending motion to stay or transfer to District of Connecticut filed November 16, 2022;

- *Barnette v. Unilever United States, Inc.*, No. 3:22-cv-01649 (D. Conn.) (previously No. 3:22-cv-01236 (M.D. Fla.)) (filed Nov. 9, 2022) — transferred to District of Connecticut on December 20, 2022 by agreement of the parties (Dkt. No. 14);

- *Schriver v. Unilever United States, Inc.*, No. 3:22-cv-01617 (D. Conn.) (previously No. 1:22-cv-23706 (S.D. Fla.)) (filed Nov. 11, 2022) — transferred to District of Connecticut on December 5, 2022 by agreement of the parties (Dkt. No. 9), and dismissed by plaintiffs on January 13, 2023 (Dkt. No. 22);

- *Simmons v. Unilever United States, Inc.*, No. 3:22-cv-23376 (N.D. Fla.) (filed Nov. 17, 2022) — motion to stay or transfer to District of Connecticut filed December 8, 2022, case stayed pending Panel's ruling (Dkt. No. 10); and

- *Loudenslager v. Unilever United States, Inc.*, No. 3:22-cv-01020 (M.D. La.) (filed Dec. 14, 2022) — pending motion to transfer to District of Connecticut filed December 19, 2022 (Dkt. No. 5).[4]

Two of the copycat class actions—*Sims* and *Simmons*—were filed by counsel for Movants here.

---

[4] An additional case, not included in Movants' Schedule of Actions, was filed four days ago in an apparent attempt to influence this Panel's decision. *See* Class Action Complaint, Dkt. No. 1, *Earl v. Unilever United States, Inc.*, No. 1:23-cv-00360 (N.D. Ill Jan. 20, 2023). The *Earl* case was filed by two different plaintiffs, one of whom purchased antiperspirant and seeks to represent a nationwide class of antiperspirant purchasers, and a different plaintiff who purchased dry shampoo and seeks to represent a separate and distinct nationwide class of dry shampoo purchasers. *See* Class Action Complaint ¶¶ 51-52, 57-58, Docket No. 1 (Jan. 20, 2023). Plaintiffs' counsel in *Earl* has a close relationship with Movants' counsel, serving as local counsel for the Bursor & Fisher firm in numerous cases in the Northern District of Illinois. The *Earl* case was filed nine months after the last antiperspirant case was filed and ten months after the antiperspirant recall. Other than influencing this proceeding, there appears to be no reason why these plaintiffs' cases—involving entirely different products and putative classes of purchasers—were filed jointly in January 2023. Unilever plans to move to sever and transfer the dry shampoo plaintiff's case to the District of Connecticut.

Four of the seven dry shampoo class actions (including *Little*) were either filed in or have been transferred to the District of Connecticut—where the first dry shampoo case was filed.[5]  Three others (*Sims*, *Simmons*, and *Loudenslager*) have pending motions to transfer.  The court stayed *Little* for 90 days in anticipation of receiving transfer of all of the copycat dry shampoo class actions.  *See* Minute Entry, *Little*, Dkt. No. 17 (Nov. 29, 2022) (Exhibit C).

In an effort to avoid that result, counsel for the *Barnes* antiperspirant plaintiffs (counsel for Movants here) moved to reassign *Sims*, a dry shampoo case they filed in the Northern District of Illinois, to the judge presiding over the *Barnes* antiperspirant case, under a local rule permitting reassignment of "related cases." The *Barnes* court denied the motion, which was based on arguments similar to those made in their motion here.  *See* Minute Entry, *Barnes*, Dkt. No. 83, (Dec. 14, 2022). The *Barnes* antiperspirant plaintiffs then moved to intervene and transfer the *Barnette* dry shampoo case to the Northern District of Illinois—despite agreement by all *Barnette* parties to transfer the case to Connecticut.  The *Barnette* court denied the motion to intervene, and instead transferred the case to the District of Connecticut.  *See* Order and Transfer, *Barnette*, Dkt. Nos. 14, 15 (Dec. 20 and 27, 2022).

Now, counsel for the *Barnes*, *Simmons*, and *Sims* plaintiffs seek the formation of an MDL encompassing litigation involving different products and different putative classes—despite the progress in consolidating the dry shampoo litigation in Connecticut through motion practice—in order to wrest control over the dry shampoo litigation against Unilever from the plaintiffs in the first-filed *Little* case.

---

[5] The *Schriver* case was recently dismissed by plaintiffs after being transferred to the District of Connecticut.  *See* Minute Entry, Dkt. No. 22, *Schriver*.

## ARGUMENT

As this Panel has recognized, "centralization under Section 1407 should be **the last solution after considered review of all other options**."  *In re: Best Buy Co., Inc., California Song-Beverly Credit Card Act Litig*., 804 F. Supp. 2d 1376, 1378 (JPML 2011) (emphasis added).

Consolidating the antiperspirant and dry shampoo litigation is unnecessary and will not advance "the convenience of parties and witnesses and [] promote the just and efficient conduct of such actions."  First, the two litigations involve entirely different putative classes and products. Dry shampoos are not regulated as over-the-counter drugs, as antiperspirants are, and they were manufactured in a different facility from antiperspirant products, pursuant to different specifications, test methods, and manufacturing processes, using different ingredients. Second, the antiperspirant litigation has already been consolidated through coordination under 28 U.S.C. § 1404, so there is no need to form an MDL.  And consolidation through Section 1404 is already occurring in the dry shampoo litigation, with the majority of those cases already pending in Connecticut.[6]  If the Panel does form an MDL, it should be limited to dry shampoo litigation and centralized in the District of Connecticut.

## I.   THE ANTIPERSPIRANT AND DRY SHAMPOO LITIGATIONS INVOLVE ENTIRELY DIFFERENT PRODUCTS AND PUTATIVE CLASSES.

Movants assert that "[c]onsolidation of the cases will permit the parties to coordinate their efforts in a single proceeding, thereby promoting efficiency and preserving parties' and judicial resources."  Mot. at 8.  But they ignore critical differences between the cases, and between the antiperspirant and dry shampoo products at issue.  The antiperspirant and dry shampoo products

---

[6] Even setting aside the now-dismissed *Schriver* case, half of the dry shampoo cases (three of six) are pending in the District of Connecticut.

are entirely different, and were the subject of different recalls.  The products are used differently, regulated differently, and serve different purposes.

Most importantly, there is no overlap in the putative class of antiperspirant purchasers in *Barnes* and the putative classes of dry shampoo purchasers.  Movants claim that the litigations "seek certification of similar classes" while admitting "they involve different products."  Mot. at 7.  But the putative classes are not "similar."  With generic class definitions encompassing all product purchasers, the product makes the class definition.  The only thing that separates the definitions in these cases from virtually every other consumer class action is the products that class members purchased—which are different between these two litigations.

Movants also assert that the litigation over these different products is similar because the benzene contamination in each had the same "source," namely the products' respective propellants.  *See* Mot. at 4, 5, 10.  But, in fact, the antiperspirant and dry shampoo products do not contain the same propellants.  *See* Declaration of Peter Climie, ¶¶ 7-8 ("Climie Decl.") (Exhibit D). Further, they were manufactured in different facilities, pursuant to different specifications and test methods and using different manufacturing processes.  *Id.*  Trace benzene contamination is not an issue limited to a single propellant source or the result of a single cause.  Movants' own pleadings show they are well aware that benzene is a "ubiquitous chemical in our environment" and that trace levels of benzene have been found in many different products from different companies. These facts belie any notion that "benzene in the propellant" will result in duplicative discovery across products.  *See* First Am. Consol. Class Action Compl. ¶ 38(c), *Barnes*, Dkt. No. 60 ("Benzene is a ubiquitous chemical in our environment.") (Exhibit A); Class Action Compl. ¶¶ 11-18, *Simmons*, Dkt. No. 1 (Nov. 17, 2022) (Exhibit E) (outlining discovery of benzene and

resulting litigation in a variety of aerosol consumer products made by different manufacturers, including sunscreen, body spray, and dry shampoo products).

Moreover, to the extent there may be some limited overlap between the antiperspirant and dry shampoo litigation, Unilever is ready and willing to act cooperatively to avoid duplication. For example, if a witness had testimony relevant to both litigations, Unilever would consider agreeing to cross-notice the deposition. Reducing duplicative discovery helps Unilever as much as it does the plaintiffs. *See In re Chilean Nitrate Products Liab. Litig.,* 787 F. Supp. 2d 1347, 1347-48 (JPML 2011) (denying transfer because defendant offered to coordinate discovery and depositions in the few cases presented for consolidation); *In re Children's Pers. Care Prods. Liab. Lit.*, 655 F. Supp. 2d 1365, 1366 (JPML 2009) (discussing a variety of informal coordination mechanisms).

Movants also ignore a key distinction between the two litigations: antiperspirant products are regulated by FDA as cosmetics and over-the-counter (OTC) drugs, whereas dry shampoo is regulated only as a cosmetic. As a result, antiperspirant products were manufactured pursuant to methods and specifications particular to OTC drugs that are inapplicable to the dry shampoo products. *See* Climie Decl., ¶ 8 (Exhibit D). OTC drugs and cosmetics are governed by different regulatory schemes, which affect the applicable legal claims and defenses. Partly for that reason, there is no basis for Movants' concern about "inconsistent pretrial rulings" or "class certification motions." Mot. at 5. As between antiperspirant and dry shampoo cases, this is simply not a meaningful concern, as the putative classes are entirely different.

Finally, Movants point out that "[t]he Actions also share overlapping claims," such as breach of warranty, unjust enrichment, and violation of consumer protection statutes. *Id.* at 10-11. But that is true of virtually all consumer product litigation. The fact that cases involving different putative classes of purchasers of different products assert the same causes of action is entirely unremarkable, and not a fact that should support a Section 1407 motion.

## II. FORMING AN MDL IS UNNECESSARY AS THE 28 U.S.C. § 1404 TRANSFER PROCESS HAS WORKED EFFECTIVELY FOR DRY SHAMPOO CASES.

Movants argue that forming an MDL is necessary for the sake of judicial efficiency. But Section 1404 is already achieving that at lower cost with less delay than an MDL. It has successfully consolidated the antiperspirant litigation into one case before one judge, and this same process is on its way to doing the same with the dry shampoo litigation. Forming an MDL is unnecessary in light of the prospect of transfer and cooperation.

### A. Forming an MDL is Not Appropriate When There is a Reasonable Prospect of Consolidation by Transfer.

This Panel has recognized that "alternative means to Section 1407 centralization, such as transfer under Section 1404(a), are preferable" and therefore "centralization under Section 1407 should be ***the last solution*** after considered review of all other options." *In re: Best Buy*, 804 F. Supp. 2d at 1378 (emphasis added). In fact, this Panel has repeatedly said that centralization is not appropriate when there is a "reasonable prospect that the multidistrict character of the actions here before us may be eliminated by" transfer under Section 1404. *In re Nelnet Servicing, LLC, Customer Data Sec. Breach Litig.*, No. MDL 3053, 2022 WL 17843103, at *1 (JPML Dec. 13, 2022); *In re Columbia River Dams Clean Water Act Litig.*, No. MDL 3027, 2022 WL 1053669, at *2 (JPML Apr. 8, 2022) (same); *In re 3M Co. Lava Ultimate Prod. Liab. Litig.*, 222 F. Supp. 3d 1347 (JPML 2016) (same); *In re: Gerber Probiotic Prod. Mktg. & Sales Pracs. Litig.*, 899 F. Supp. 2d 1378, 1379 (JPML 2012) (same); *In re Republic W. Ins. Co. Ins. Coverage Litig.*, 206 F. Supp. 2d 1364, 1365 (JPML 2002) (same).

Here, forming an MDL is not the "last solution" because achieving consolidation through Section 1404 transfer is a superior method. As this Panel has pointed out, "Section 1404(a) transfer is for all purposes, including trial." *In re: Gerber*, 899 F. Supp. 2d at 1380. "This alone produces significant advantages. It allows for the possibility of consolidation of actions for trial, which

potentially avoids the increased costs associated with multiple trials after the Panel remands actions to the various transferor courts once pretrial proceedings are concluded." *Id.* Indeed, it would make little sense to remand all the dry shampoo cases after pretrial proceedings in order to have numerous different trials on the same claims on behalf of identical nationwide classes of dry shampoo purchasers.

Movants may argue that Unilever's motions for transfer to Connecticut could be denied. But thus far, all motions have been successful. Movants oppose transfer, but even "where a Section 1404 transfer motion is contested, [a reasonable] prospect [of consolidation under Section 1404] nonetheless exists, particularly where few districts are involved." *In re Allianz Structured Alpha Funds Litig.*, 544 F. Supp. 3d 1361, 1362 (JPML 2021).

### B.     Section 1404 Coordination Was Successful In Consolidating the Antiperspirant Litigation.

The need for an MDL to achieve coordination is belied by the fact that Section 1404 coordination successfully achieved consolidation of the antiperspirant litigation. *See* Mot. at 2, 9. As detailed above, five different class actions were filed in four different districts related to Unilever's Suave 24 Hour Aerosol antiperspirant. Unilever began filing motions to transfer, stay, or dismiss cases pursuant to the first-to-file rule, in order to consolidate cases in the venue of the first-filed case, the Southern District of Florida.[7] Plaintiffs' counsel in two of the antiperspirant cases (*Leyva* and *Goytia*) dismissed their cases and simultaneously appeared as co-counsel for the *Barnes* plaintiffs, apparently due to coordination by plaintiffs' counsel. The *Morris* case was

---

[7] It is not true, as Movants state, that *Barnes* was the first-filed antiperspirant case. *See* Mot. at 2, 9. Rather, *Leyva* was the first-filed case. But (after apparent informal coordination among plaintiffs' counsel) counsel for *Leyva* dismissed his client's case and appeared as co-counsel for the *Barnes* plaintiffs. Thus, *Barnes* is the first-filed (and only) antiperspirant case against Unilever *that is still pending*.

already pending in the Northern District of Illinois and was reassigned to Judge Kennelly and consolidated with *Barnes*.  Later, in response to Unilever's motion to transfer and separate motion to dismiss, the plaintiff in *Bogdanovs* consented to transfer from the Central District of California to the Northern District of Illinois to be consolidated with *Barnes*.

All of the antiperspirant cases have been consolidated as the result of Unilever's Section 1404 motions and the parties' resulting cooperation.  There is no reason this process cannot succeed for the dry shampoo cases.

**C.      Section 1404 Coordination Is Already Occurring in the Dry Shampoo Litigation.**

Similarly, the Panel need not guess whether transfer motions and Section 1404 coordination can be successful in consolidating the dry shampoo litigation.  It is already working.

The *Little* dry shampoo case was filed before the recall and before the six copycat cases were filed.  After Unilever began filing transfer motions, plaintiffs in most of the cases agreed to transfer to the District of Connecticut, where *Little* was pending.  Judge Michael P. Shea stayed *Little* for 90 days in anticipation of receiving transfer of these copycat cases.  *Rullo*, *Barnette*, and *Schriver* (before it was voluntarily dismissed), were all transferred to the District of Connecticut with the agreement of the parties—despite the *Barnes* plaintiffs' unsuccessful attempt to intervene and transfer *Barnette* to Illinois instead.  There are only three cases remaining: *Simmons*, *Sims*, and *Loudenslager*, pending in the Northern District of Florida, the Northern District of Illinois, and the Middle District of Louisiana, respectively.  Unilever has pending motions to transfer in each of these cases.  Unilever fully expects that, if this Panel does not form an MDL, these courts will transfer these cases to Connecticut to proceed with *Little*.

Even in the unlikely event that the three remaining cases are not transferred, the existence of dry shampoo cases in four districts does not necessarily justify the formation of an MDL.  But more importantly, this Panel has recognized that "it is better to allow the parties' attempts to self-

organize play out before centralizing any part of this litigation."  *In re Baby Food Mktg., Sales Pracs. & Prod. Liab. Litig*., 544 F. Supp. 3d 1375, 1378 (JPML 2021).  After all, "[i]f the actions against [Unilever] are not consolidated in a single district, and if alternative means of informal coordination and cooperation are ineffective with respect to any actions that remain outside the [target district], the parties at that time may pursue a more focused request for centralization."  *Id.*  Until the preferred method of transfer under Section 1404 fails, the formation of an MDL is premature.

## III.   ALTERNATIVELY, ANY MDL SHOULD BE LIMITED TO DRY SHAMPOO LITIGATION AND LOCATED IN THE DISTRICT OF CONNECTICUT.

For the reasons stated above, centralization under Section 1407 is not warranted.  However, if the Panel disagrees, centralization should be limited to dry shampoo cases, and the District of Connecticut is the most appropriate forum for those cases.

### A.   There is No Need to Form an MDL, Much Less One Encompassing Both Antiperspirant and Dry Shampoo Litigation.

Much of Movants' brief sets forth arguments that support the need for coordination of dry shampoo cases seeking to represent the same nationwide class.  But they fail to show that forming an MDL is necessary (or desirable), especially given the availability of informal coordination and Section 1404 transfer and consolidation.  Nor can they show that lumping together dry shampoo and antiperspirant litigations is necessary or appropriate when there have already been two rounds of briefing to dismiss the antiperspirant cases.

This Panel has recognized that a low number of cases weighs against the formation of an MDL.  *See In re Gen. Motors LLC Chevrolet Bolt EV Battery Prod. Liab. Litig*., 532 F. Supp. 3d 1413, 1415 (JPML 2021) (denying motion for centralization because "there are just eight actions pending" and any additional case may be addressed with Section 1404 transfer motions and informal coordination).  Here, there are only three dry shampoo cases pending outside the District

13

of Connecticut. *See In re Baby Food*, 544 F. Supp. 3d at 1378 (denying centralization of 38 cases, reasoning that "it is better to allow the parties' attempts to self-organize play out before centralizing any part of this litigation").

Movants may point to this Panel's formation of an MDL in the benzene litigation against Proctor & Gamble regarding its body spray products (MDL No. 3025), in which this Panel noted that a few of the potential tag-along cases involved dry shampoo products. *See In re Procter & Gamble Aerosol Prod. Mktg. & Sales Pracs. Litig*., No. MDL 3025, 2022 WL 1053652, at *1 (JPML Apr. 7, 2022). But there were far more cases at issue there, and no party opposed forming an MDL. Moreover, all parties supported including the dry shampoo and body spray cases together. *See id.* n.4 ("Defendant supports inclusion of the actions involving P&G aerosol shampoo and conditioner products in the MDL, as do nearly all plaintiffs who addressed this question. No party opposes inclusion of these actions.").

Movants tacitly concede there will be significant differences between the dry shampoo and antiperspirant litigations, suggesting that the presiding judge could account for these differences by "establishing separate discovery and/or motion tracks related to Deodorant and Dry Shampoo Actions." Mot. at 5. But it makes little sense to consolidate class litigation over two different products and different putative classes, only to create separate litigation tracks. Consolidation of dry shampoo litigation through Section 1404, along with cooperative efforts where appropriate (e.g., cross-noticing depositions), makes more sense.

Most importantly, this Panel need not lump together litigation involving two different products, made with different propellants at different manufacturing facilities, subject to different regulatory standards, different recalls that were different in scope, and seeking to represent entirely

14

different putative classes of purchasers.  While 1404 coordination is superior, any MDL formed should be limited to the dry shampoo litigation.

### B. If the Panel Finds Centralization of the Dry Shampoo Cases Warranted, the District of Connecticut Would be the Most Appropriate Forum.

This Panel considers a number of factors in determining the appropriate forum for an MDL, including: (1) where the largest number of cases is pending; (2) where discovery has occurred; (3) where cases have progressed furthest; (4) the site of the occurrence of common facts; (5) where cost and inconvenience will be minimized; and (6) the experience, skill and caseloads of available judges.  *See* Manual for Complex Litig. § 20.131 (4th ed.).  Here, these factors collectively support the District of Connecticut as the appropriate transferee court.

### 1. The District of Connecticut is Where the First-Filed Action was Filed, and Where Most Later-Filed Dry Shampoo Cases Are Now Pending.

This Panel has stated that it is appropriate to give weight to the location of the first-filed action in selecting a transferee district.  *See, e.g.*, *In re Prudential Ins. Co. v. America SGLI/VGLI Contract Litig.*, 763 F. Supp. 2d 1374, 1375 (JPML 2011); *Mattel, Inc., Toy Lead Paint Prods. Liab. Litig.*, 528 F. Supp. 2d 1367, 1369 (JPML 2007).  The District of Connecticut is where the first-filed *Little* action is pending and where three other dry shampoo cases have already been transferred. *Little* was filed in the District of Connecticut on September 21, 2022, more than a month before any other case, and *Schriver*, *Rullo*, and *Barnette* were transferred there in December 2022. As noted above, Unilever has filed motions to transfer the remaining dry shampoo cases to the District of Connecticut under the first-to-file rule.  In addition, the actions transferred to the District of Connecticut include eleven named plaintiffs (not including the four named plaintiffs in the now-dismissed *Schriver* case), more than in the actions that have not yet been transferred there. *See* Exhibit F at 1 (Named Plaintiffs and State-Specific Subclasses in Dry Shampoo Cases on Movants' Schedule of Actions).

### 2. Discovery of Unilever Has Not Commenced in Any of the Cases, and No Case Has Progressed Past the Pleading Stage.

While the first factor weighs in favor of the District of Connecticut as a transferee district, the second and third factors—the location where discovery has commenced, and where cases have progressed the furthest—are neutral here. Discovery has not yet begun against Unilever in any of the dry shampoo cases, and none has progressed past the pleading stage.[8]

### 3. The Majority of Witnesses and Documents Are Located in Connecticut, and Costs and Inconvenience to Parties, Witnesses, and Counsel Would Be Minimized There.

To the extent the Panel orders centralization, costs and inconvenience to the parties, witnesses, and counsel would be minimized in the District of Connecticut. This Panel has often selected the forum with the strongest "nexus" to the plaintiffs' allegations—or the litigation's "center of gravity"—as the appropriate transferee district. *See, e.g.*, *In re Nine W. LBO Sec. Litig.*, 464 F. Supp. 3d 1383, 1385 (JPML 2020). The Panel considers not only the forum where evidence will likely be found, but also the forum where third party witnesses will be located. *In re Suboxone (Buprenorphine Hydrochloride and Naloxone) Antitrust Litig.*, 949 F. Supp. 2d 1365, 1366 (JPML 2013).

For a number of reasons, the forum with the greatest nexus to the litigation is the District of Connecticut. First, while Unilever is a Delaware corporation with its headquarters and principal place of business in Englewood Cliffs, New Jersey, Unilever employs approximately 350 scientists at its Trumbull, Connecticut facility, in addition to other Connecticut-based employees. *See* Climie Decl. ¶¶ 4-5 (Exhibit D). Many of Unilever's employees responsible for research and

---

[8] This is true even if the Panel were to consider the *Barnes* antiperspirant case along with the dry shampoo cases. While the parties have briefed a motion to dismiss, and the Court has ruled on a prior motion to dismiss an earlier version of the complaint, no Rule 26(f) conference has occurred, and Unilever has not yet responded to written discovery requests.

development, testing, regulatory compliance, claims assessment, and safety assessment for its dry shampoo products are based at its Trumbull, Connecticut research facility. *Id.* ¶ 6.

Both Unilever's headquarters in Englewood Cliffs, New Jersey and its research facility in Trumbull, Connecticut are significantly closer to the District of Connecticut than to the Northern District of Illinois (the forum proposed by Movants). Travel to Chicago would be considerably more expensive for these Northeast-based Unilever employee-witnesses, and would result in greater time away from employees' families and job responsibilities.

The District of Connecticut is also the location of Valisure, the third party laboratory that serves as a retained litigation expert by the plaintiffs in *Little*, and whose testing spawned this litigation.[9] Minimizing the burden and expense of subpoena compliance by third parties, which issuing parties are obligated to do under the Federal Rules, *see* Fed. R. Civ. P. 45, would undoubtedly be easier in Connecticut, where Valisure is located.[10]

The District of Connecticut is also the most convenient location for the named plaintiffs and their counsel in the dry shampoo cases. As noted above, 11 named plaintiffs have already agreed that the District of Connecticut is a convenient and appropriate forum for these cases (the nine named plaintiffs and their counsel in the first-filed *Little* case, and the two named plaintiffs and their counsel in *Rullo* and *Barnette*). Even looking solely at the eight named plaintiffs in the

---

[9] *See Little* Class Action Compl., ¶¶ 2, 61-63, Dkt. No. 1 (Exhibit B); *Barnes* First Am. Consol. Class Action Compl. ¶¶ 45-57, 72, 83-84, 98, Dkt. No. 60 (Exhibit A); *Loudenslager* Class Action Compl. ¶¶ 1, 16-22, 36, 41-45, 54, 57, 84, Dkt. No. 1. *See also Rullo* Class Action Compl., ¶¶ 7, 49-53, 67, Dkt. No. 1; *Sims* Class Action Compl. ¶ 44, Dkt. No. 1; *Barnette* Class Action Compl., ¶ 40, Dkt. No. 1; *Schriver* Am. Class Action Compl. ¶¶ 34, 38-39, Dkt. No. 5; and *Simmons* Class Action Compl. ¶¶ 11-21, 28-30, Dkt. No. 1, (Exhibit E).

[10] Again, while Unilever maintains that centralization of the dry shampoo cases with the *Barnes* antiperspirant case would be unwarranted, Valisure is also a significant third party witness in that case. For that reason, this factor would support the District of Connecticut as a transferee district even if the *Barnes* antiperspirant cases were included within any centralization order.

not-yet-transferred cases on Movants' Schedule of Actions, two either reside in Connecticut or much closer to the District of Connecticut than to Movants' proposed forum.[11]  Moreover, of the twelve law firms and attorneys representing Unilever and the plaintiffs in the dry shampoo cases listed there, nine are either located in the Northeast or have offices there. And in the cases not yet transferred, four of the six law firms representing plaintiffs in those cases are located in or have offices in the Northeast. *See* Exhibit F at 2 (Counsel in Dry Shampoo Cases on Movant's Schedule of Actions).

The goals of minimizing costs and inconvenience to the parties, third parties, and counsel are already being achieved by the parties' coordination efforts and Unilever's Section 1404 and first-to-file motions.  Nevertheless, for all the reasons set forth above, should the Panel order centralization, the District of Connecticut is the forum that could best achieve these goals as a transferee district.  Regardless, even for those parties or counsel not located in Connecticut or in the Northeast, virtually every major domestic air carrier services Hartford, with nonstop service available to most metropolitan areas.

Again, the goals of minimizing costs and inconvenience to the parties, third parties, and counsel are already being achieved by the parties' coordination efforts and Unilever's Section 1404 and first-to-file motions.  Nevertheless, for all the foregoing reasons, should the Panel order centralization, the District of Connecticut would best achieve these goals as a transferee district.

---

[11] Two named plaintiffs in *Simmons* reside in Connecticut and North Carolina. *See Simmons v. Unilever United States, Inc.*, Dkt. No. 1, at ¶¶ 6 and 8 (N.D. Fla.). Two other named plaintiffs in that case reside in Georgia and Florida in similar proximity to both Connecticut and Illinois.

### 4. *Judges in the District of Connecticut Are Well-Equipped to Accept Transfer.*

Finally, if the Panel orders centralization, the judges of the District of Connecticut are well-positioned to preside over these cases. The most recent publicly-available statistics published by the Administrative Office of the U.S. Courts support this conclusion. Compared to most other districts in which the related cases are pending, the District of Connecticut enjoys favorable caseload management statistics, including fewer actions per judgeship, lower median time from filing to (civil) trial, and lower percentage of cases over three years old. *See* U.S. District Courts — National Judicial Caseload Profiles, Excerpts including District of Connecticut and Northern District of Illinois (Exhibit G).

As noted above, dry shampoo cases are already being transferred to Judge Shea, who has entered a stay in the first-filed *Little* case while the parties complete the transfer of later-filed cases to him; all but three cases have already been transferred. Judge Shea has been on the bench since 2012, and has experience presiding over class actions and complex civil cases.

This Panel recognizes the value in assigning an MDL to a skilled jurist who has yet to preside over one in order to broaden and deepen the bench of judges with MDL experience. *See, e.g.*, *In re Clearview AI, Inc. Consumer Privacy Litig.*, 509 F. Supp. 3d 1368, 1369-70 (JPML 2020) ("Centralization in this district also provides us the opportunity to assign the litigation to a capable jurist who has not yet presided over an MDL."). In addition to Judge Shea, there are other experienced judges in the District of Connecticut, including Judge Stefan R. Underhill, "a jurist well versed in the nuances of complex and multidistrict litigation" who has presided over MDLs in the past. *See In re: Aggrenox Antitrust Litig.*, 11 F. Supp. 3d 1342, 1343 (JPML 2014). Moreover, neither Judge Shea, Judge Underhill, nor any other judge in the district is currently presiding over an MDL. The Panel has recognized the value of selecting a transferee judge that

"is not currently assigned to another" MDL, and that therefore "has the time and commitment necessary to steer . . . cases on a fair and expeditious course." *See In re Bayer Corp. Combination Aspirin Prods. Mktg. & Sales Practices Litig.*, 609 F. Supp. 2d 1379, 1380 (JPML 2009).  By way of comparison, Judge Kennelly was just assigned an MDL in late 2022,[12] and both he and Judge Pacold (the two judges proposed by Movants) have nearly twice the number of open civil cases as Judge Shea and Judge Underhill.[13]

## **<u>CONCLUSION</u>**

For the reasons set forth above, Unilever respectfully asks the Panel to deny Movants' motion.[14]


Dated: January 24, 2023          */s/ Patrick Oot*
                                  Patrick Oot
                                  E-Mail: oot@shb.com
                                  SHOOK, HARDY & BACON L.L.P.
                                  1800 K St. NW, Suite 1000
                                  Washington, D.C. 20006
                                  T: (202) 783-8400 |

                                  ***Counsel for Defendant Unilever United States, Inc.***

---

[12] Judge Kennelly presides over MDL 3037, *In re: Recalled Abbott Infant Formula Products Liability Litigation*. That MDL was just formed in August 2022 and currently includes at least 40 pending actions. *See id.* Dkt. No. 65, *In re: Recalled Abbott Infant Formula Products Liability Litigation*, 1:22-cv-04148 (N.D. Ill. 2022)

[13] *See also* Lex Machina Courts & Judge Comparator Report: Michael P Shea and Stefan R. Underhill of D. Conn. and Matthew F. Kennelly and Martha M. Pacold of N.D. Ill. (Exhibit H).

[14] Should the Panel decide to create an MDL, its name should not include "products liability," as Movants suggest, because there are no personal injury cases in the Schedule of Actions, only consumer class actions alleging solely economic damages.

Carly Elyse Jonakin
Harvey Sylvanous Bartlett , III
Elizabeth Blair Schilling
**Fishman Haygood LLP**
210 St. Charles Avenue
46th Floor
New Orleans, LA 70170
(504) 556-5573
cjonakin@fishmanhaygood.com
tbartlett@fishmanhaygood.com
bschilling@fishmanhaygood.com

Steven L. Bloch
Ian W. Sloss
Zachary A. Rynar
**SILVER GOLUB & TEITELL LLP**
One Landmark Sq., 15th Floor.
Stamford, CT 06901
PHONE: (203) 325-4491
FAX: (203) 325-3769
sbloch@sgtlaw.com
isloss@sgtlaw.com
zrynar@sgtlaw.com

Carl V. Malmstrom
WOLF HALDENSTEIN
ADLER FREEMAN & HERZ
LLC
111 W. Jackson St., Suite 1700
Chicago, Illinois 60604
Tel:: (312) 984-0000
Fax: (212) 686-0114
malmstrom@whafh.com

*Attorneys for Plaintiff Linda Loudenslager*

*Attorneys for Plaintiffs Elizabeth Little, Cathy Armstrong, Clair Awad, Kelly Branch, Suzanne Fitzgerald, Mari Gunn, Sarah Herandez, Stacy Vail, and Christina VanViet*

*Attorney for Plaintiffs Elizabeth Earl and Jeanette Rock*

Gary M. Klinger
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
(866) 252-0878
gklinger@milberg.com

Nick Suciu, III
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN PLLC**
6905 Telegraph Rd., Suite 115
Bloomfield Hills, MI 483021
(313) 303-3472
nsuciu@milberg.com

Kevin Laukaitis
Jonathan Shub
**SHUB LAW FIRM LLC**
134 Kings Hwy E, FI-2
Haddonfield, NJ 08033
(856) 772-7200
klaukaitis@shublawyers.com
jshub@shublawyers.com

Sarah N. Westcot
**BURSOR & FISHER, P.A.**
701 Brickell Avenue, Suite 1420
Miami, FL 33131
(305) 330-5512
swestcot@bursor.com

Max S. Roberts
**BURSOR & FISHER, P.A.**
888 Seventh Avenue
New York, NY 10019
(646) 837-7150
mroberts@bursor.com

Charles E. Schaffer
David C. Magagna Jr.
**LEVIN, SEDRAN & BERMAN, LLP**
510 Walnut Street, Suite 500
Philadelphia, PA 19106
cschaffer@lfsblaw.com
dmagagna@lfsblaw.com

*Attorneys for Plaintiff Lawanda Sims*

Olimpio Lee Squitieri
Stephen J. Fearon, Jr.
**SQUITIERI & FEARON, LLP**
305 Broadway, 7th Floor
New York, New York 10007
(212) 421-6492
lee@sfclasslaw.com
stephen@sfclasslaw.com

Joseph R. Santoli
340 Devon Court
Ridgewood, New Jersey 07450
(201) 926-9200
Josephsantoli002@gmail.com

*Attorneys for Plaintiff Robert Rullo*

R. Jason Richards
Bryan F. Aylstock
**AYLSTOCK, WITKIN, KREIS &
OVERHOLTZ, PLLC**
17 East Main Street
Suite 200
Pensacola, FL 32502
(850) 202-1010
jrichards@awkolaw.com
baylstock@awkolaw.com

*Attorneys for Plaintiffs Samantha
Simmons, Ansleigh Walters, MaryKay
Thrower, Jackie Spivey, Laura
Martson and Chrissie Humenny*

Mark B. DeSanto
Joseph G. Sauder
**SAUDER SCHELKOPF**
1109 Lancaster Avenue
Berwyn, PA 19312
(888) 711-9975
jgs@sstriallawyers.com
mbd@sstriallawyers.com

*Attorneys for Plaintiff Billie Barnette*